# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

_____

Nos.  23-1400
          23-1463

_____

ADRIANNA WADSWORTH,
Plaintiff-Appellee/Cross-Appellant,

v.

CHUCK NGUYEN
Defendant-Appellant/Cross-Appellee,

MSAD 40/RSU 40; ANDREW CAVANAUGH
Defendants/Cross-Appellees

MEDOMAK VALLEY HIGH SCHOOL
Defendant.

_____

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF MAINE

_____

## BRIEF OF CROSS-APPELLEE MSAD 40/RSU 40

Melissa A. Hewey, Bar No. 40774
DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, ME  04101-2480
Tel: (207) 772-1941
_Counsel for Defendant/Cross-
Appellee_

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

_____

Nos.  23-1400
        23-1463

_____

ADRIANNA WADSWORTH,
Plaintiff-Appellee/Cross-Appellant,

v.

CHUCK NGUYEN
Defendant-Appellant/Cross-Appellee,

MSAD 40/RSU 40; ANDREW CAVANAUGH
Defendants/Cross-Appellees

MEDOMAK VALLEY HIGH SCHOOL
Defendant.

_____

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF MAINE

_____

**BRIEF OF CROSS-APPELLEE MSAD 40/RSU 40**

Melissa A. Hewey, Bar No. 40774
DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, ME  04101-2480
Tel: (207) 772-1941
_Counsel for Defendant/Cross-
Appellee_

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... iii

INTRODUCTION ..................................................................................1

STATEMENT OF THE ISSUES...............................................................2

STATEMENT OF THE CASE..................................................................3

      A.    The Factual Record on Summary Judgment .........................................3

      B.    The District Court's Summary Judgment Decision .............................8

SUMMARY OF THE ARGUMENT ....................................................10

ARGUMENT .......................................................................................13

      I.    Standard of Review ..........................................................13

      II.    The District Court Properly Determined that RSU 40 is
           Entitled to Judgment as a Matter of Law on the Title IX Claim
           Because Wadsworth Cannot Point to Evidence that the
           District was Deliberately Indifferent...................................14

           i.  Wadsworth's New Argument that Nguyen is an
           "Appropriate Person" with "Actual Knowledge" Has Been
           Waived ...........................................................................17

           ii.  The Summary Judgment Record Establishes that
           Nguyen was not an "appropriate person" ......................19

           iii.  Wadsworth Failed to Produce Specific Facts Showing
           that Either Philbrook or Pease was an "Appropriate
           Person" for the Purposes of Title IX ..............................24

           iv.  The District Court Properly Concluded that Neither
           Philbrook nor Pease had "Actual Knowledge" of any
           Sexual Harassment .......................................................26

III.   The District Court Properly Determined that RSU 40 is Entitled to Judgment as a Matter of Law on Wadsworth's Section 1983 Claim Because there is No Record Evidence to Support Municipal Liability ..................................................35

      i.  RSU 40's Sexual Harassment Policy Was Not the 'Moving Force' Behind any Equal Protection Violation...........35

     ii.  Wadsworth Cannot Point to Any Facts Showing that a Failure to Train Led Amounted to Deliberate Indifference ................................................................................39

CONCLUSION ....................................................................................42

CERTIFICATE OF COMPLIANCE.....................................................43

CERTIFICATE OF SERVICE ..............................................................44

# TABLE OF AUTHORITIES

*B.W. v. Career Tech. Ctr. Of Lackawanna Cnty.*,
　422 F.Supp.3d 859 (M.D. Pa. 2019) .................................................. 22

*Baynard v. Malone*,
　268 F.3d 228 (4th Cir. 2001) ............................................................. 21

*Board of County Com'rs of Bryan County, Okl. v. Brown*,
　520 U.S. 397 (1997) ............................................................ 35, 37, 41

*Brodeur v. Claremont Sch. Dist.*,
　626 F.Supp.2d 195 ............................................................................. 32

*Brown v. Arizona*,
　82 F.4th 863 (9th Cir. 2023) ............................................................. 31

*Burrell v. Hampshire Cnty.*,
　307 F.3d 1 (1st Cir. 2002) ............................................................ 37, 38

*C.S. v. Madison Metropolitan Sch. Dist.*,
　34 F.4th 536 (7th Cir. 2022) ............................................................. 32

*City of Canton, Ohio v. Harris*,
　489 U.S. 378 (1989) .......................................................................... 39

*Connick v. Thompson*,
　563 U.S. 51 (2011) ........................................................... 35, 39, 40

*Davis v. DeKalb Cnty. Sch. Dist.*,
　233 F.3d 1367 (11th Cir. 2000) ........................................................ 33

*Davis v. Monroe County Bd. of Educ.*,
　526 U.S. 629 (1999) ..................................................................... Passim

*Doe v. Bradshaw*,
　203 F.Supp.3d 168 (D. Mass. 2016) ................................................. 34

*Doe v. Edgewood Ind. Sch. Dist.*,
　964 F.3d 351 (5th Cir. 2020) ............................................................ 38

*Doe v. Fairfax County Sch. Bd.*,
   1 F.4th 257 (4th Cir. 2021) ............................................................ 29, 30

*Doe v. Glaser*,
   768 F.3d 611 (7th Cir. 2014) ............................................................ 30

*Doe v. Loyalsock Twp. Sch. Dist.*,
   2022 WL 1110310 (M.D. Pa. April 13, 2022)................................... 22

*Doe v. Pawtucket Sch. Dep't*,
   969 F.3d 1 (1st Cir. 2020)...................................................... 14, 17, 34

*Doe v. Sch. Bd. Of Broward Cnty.*,
   604 F.3d 1248 (11th Cir. 2010) ......................................................... 31

*E.N. v. Susquehanna Tp. School Dist.*,
2010 WL 4853700 (M.D. Pa. Nov. 23, 2010)........................................ 23

*Escue v. N. Okla. Coll.*,
   450 F.3d 1146 (10th Cir. 2006) ......................................................... 26

*Feliciano-Munoz v. Rebarber-Ocasio*,
   970 F.3d 53 (1st Cir. 2020)................................................................ 27

*Forth v. Laramie Cnty. Sch. Dist. No.*,
   85 F.4th 1044 (10th Cir. 2023) ......................................................... 31

*Frazier v. Fairhaven Sch. Comm.*,
   276 F.3d 52 (1st Cir. 2002)................................................................ 15

*Gebser v. Lago Vista Ind. Sch. Dist.*,
   524 U.S. 274 (1998) ..................................................................Passim

*Gray v. Cummings*,
   917 F.3d 1 (1st Cir. 2019).................................................................. 40

*Guldseth v. Fam. Med. Assocs., LLC*,
   45 F.4th 526 (1st Cir. 2022) .............................................................. 13

*Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp.*,
   551 F.3d 599 (7th Cir. 2008) .................................................................... 33

*Hill v. Walsh*,
   884 F.3d 16 (1st Cir. 2018).................................................................... 40

*J.S. v. Houston Cnty. Bd. of Educ.*,
   877 F.3d 979 (11th Cir. 2017) ............................................................... 23

*KD v. Douglas Cnty. Sch. Dist. No. 001*,
   1 F.4th 591 (8th Cir.) ........................................................................... 33

*Mancini v. City of Providence ex rel. Lombardi*,
   909 F.3d 32 (1st Cor. 2018)................................................................... 13

*Mary M. v. N. Lawrence Cmty. Sch. Corp.*,
   131 F.3d 1220 (7th Cir. 1997) ............................................................... 34

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Flanders-Borden*,
   11 F.4th 12 (1st Cir. 2021).................................................................... 19

*Mesnick v. Gen. Elec. Co.*,
   950 F.2d 816 (1st Cir. 1991).................................................................. 28

*Monell v. New York City Dep't of Soc. Servs.*,
   436 U.S. 658 (1978) ...................................................................... 35, 38

*Pac. Indem. Co. v. Deming*,
   828 F.3d 19 (1st Cir. 2016)................................................................... 13

*Plamp v. Mitchell School Dist. No. 17-2*,
565 F.3d 450......................................................................... 20, 21, 25

*Porto v. Town of Tewksbury*,
   488 F.3d 67 (1st Cir. 2007)................................................................... 14

*Rosa H. v. San Elizario Indep. Sch. Dist.*,
   106 F.3d 648 (5th Cir. 1997) ................................................................ 21

*Ross v. Univ. of Tulsa*,
  859 F.3d 1280 (10th Cir. 2017) ............................................................. 21

*Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*,
  511 F.3d 1114 (10th Cir. 2008) ............................................................. 33

*Santiago v. Puerto Rico*,
  655 F.3d 61 (1st Cir. 2011) ...........................................................Passim

*Sierra Club v. Wagner*,
  555 F.3d 21 (1st Cir. 2009) ................................................................. 17

*Warren ex rel. Good v. Reading School Dist.*,
  278 F.3d 163 (3d Cir. 2002) ............................................................... 20

**Statutes**

20 U.S.C. § 1681 ............................................................................... 1, 14

20 U.S.C. § 1682 ................................................................................. 15

42 U.S.C. § 1983 ...........................................................................Passim

**Rules**

D. Me. LR 56 ......................................................................................... 3

# INTRODUCTION

Defendant/Cross-Appellee MSAD 40/RSU 40 ("RSU 40" or the "District") is a Maine school administrative unit that operates the Medomak Valley High School ("MVHS") in Waldoboro, Maine. Plaintiff Adrianna Wadsworth claims that she was sexually harassed by Andrew Cavanaugh, who the principal of MVHS when Wadsworth was a student there. There is no dispute that as soon as allegations of sexual harassment were brought to the attention of the Superintendent of RSU 40, Cavanaugh was immediately removed from his position and never returned to the school. Nonetheless, Wadsworth brought suit not only against Cavanaugh and Chuck Nguyen, a school social worker, but also against RSU 40, alleging state law tort claims[1] against the District as well as under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681(a), and 42 U.S.C 1983. Because the undisputed record in this case establishes that no "appropriate person" at RSU 40 had actual knowledge of the harassment and because Plaintiff was unable to generate a factual issue to support her claim for municipal liability under 42 U.S. C. § 1983, the district court entered summary judgment on all of Wadsworth's claims against the District. This Court should affirm that decision.

---

[1] The district court entered summary judgment in favor of RSU 40 on the tort claims. Wadsworth has not appealed that portion of the decision.

## STATEMENT OF THE ISSUES

1. Did Wadsworth waive her argument that Nguyen is an "appropriate person" under Title IX?

2. Are school employees "appropriate persons" under Title IX when it is undisputed that they had no authority to discipline the alleged harasser?

3. Did the district court correctly hold that the two assistant principals who worked under Cavanaugh lacked actual notice of the harassment?

4. Did the district court correctly determine that there was no record evidence of municipal liability under 42 U.S.C. § 1983?

## STATEMENT OF THE CASE

### A. The Factual Record on Summary Judgment

On appeal, this Court should consider only the facts contained in the District's statement of material facts, Appendix ("App.") 73 – 86, Wadsworth's response thereto, App. 160 - 184, Wadsworth's additional statement of facts, App. 127- 150, and the District's reply statement of facts App. 231-283.[2] Those facts are as follows.

MVHS is a high school operated by RSU 40 which is a Maine school district serving the towns of Friendship, Union, Waldoboro, Warren and Washington, Maine. App. 74, 160; *see also* Addendum ("Add.") 56 (Decision at 6). The Superintendent of RSU 40 is the direct supervisor of the principal of MVHS. App. 74, 162; *see also* Add. 56 (Decision at 6). The Superintendent has the power to nominate candidates for a building principal position to the School Board for approval, as well as the power to investigate a principal's conduct, impose discipline short of dismissal, and recommend that the School Board dismiss a principal. App. 74, 162; *see also* Add.

---

[2] District of Maine Local Rule 56 mandates that only those facts contained in the supporting, opposing and reply statements of fact will be considered on summary judgment and "[t]he court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts. D. 1685 LR 56(f). In her brief on appeal, Wadsworth rarely cites to the various statements and responsive statements of fact. Rather, she cites to allegations she made in the Complaint together with testimony in depositions included in the appendix. *E.g.* Wadsworth Brief 4-10. Facts in her brief without appropriate record citations to the statements of material fact should be disregarded.

56 (Decision at 6). The principal of MVHS is the direct supervisor of the assistant principals; the assistant principals at MVHS do not have disciplinary authority over the principal. App. 75, 162-163 *see also* Add. 56 (Decision at 6).

Stephen Nolan is the Superintendent of RSU 40 and has held that position since 2014. App. 73, 161; *see also* Add. 56 (Decision at 6). Linda Pease and Tamra Philbrook were the assistant principals at MVHS between 2015 and 2017. App. 74; *see also* Add. 56 (Decision at 6). Defendant Chuong "Chuck" Nguyen was employed as a social worker at MVHS during the time period relevant to this action. App. 74; *see also* Add. 56 (Decision at 6,).

RSU 40 has a board policy prohibiting sexual harassment (the "Sexual Harassment Policy") and a complaint procedure (the "Complaint Procedure") governing reporting of sexual harassment. App. 82, 177; *see also* Add. 87 (Decision at 37). The Sexual Harassment Policy requires that "any individual who believes that a student has been discriminated against or harassed should report their concern to the building principal." All district employees receive training on the sexual harassment policy, Add. 91 (Decision at 41).[3] All District employees who testified in this case testified that they understood that if the alleged harasser was the school

---

[3] Wadsworth denied the District's factual assertion in this regard and RSU 40 objected to the denial. The district court correctly granted the objection in part as set forth in footnote 79 of the Decision. Add. 91. These facts should therefore be deemed undisputed.

4

principal, they should report the harassment to the Superintendent. App. 130, 131, 164, 165.

Plaintiff Adrianna Wadsworth was a student at MVHS from 2014 through her graduation in June 2018. App. 74, 161; *see also* Add. 4 (Decision at 4). In the spring of 2016, Wadsworth was caught drinking alcohol at a party and began meeting with Cavanaugh in his office. At the end of the 2015-2016 school year, Cavanaugh offered to hire Wadsworth to do work for him and his sister for the summer of 2016 and her parents agreed she could work for Cavanaugh for the summer. Plaintiff worked for Cavanaugh during the summer of 2016. App. 75, 76, 164.

When the 2016-2017 school year started, Cavanaugh continued to meet with Plaintiff on a regular basis. App. 76, 165. Cavanaugh told Pease and Philbrook that the reason for these meetings was Wadsworth was dealing with a difficult family situation and needed support. App. 77, 165; *see also* Add. 122-123 (Decision at 72-73).

On October 4, 2016, Plaintiff's English teacher sent an email to Cavanaugh, Pease, Philbrook, and Nguyen stating that she and another English teacher wanted to "voice [their] concern about Anna Wadsworth being pulled from class at the request of the office." App. 77, 166; *see also* Add. 122 (Decision at 72). In the email the teachers said Plaintiff "seem[ed] stressed to be in the position of catching up" as a result of missing class and requested that administrators meet with her during study

hall or another non-academic period rather than calling her out of class. It is not uncommon for principals, assistant principals, and guidance counselors to call students out of class to address issues the student is facing. App. 77, 166. It is also not uncommon for teachers to complain when a student is called out of class by someone else in the building, like a principal, assistant principal, or guidance counselor. App. 78, 166-167; *see also* Add. 123 (Decision at 73). Cavanaugh replied to the email indicating that he and Wadsworth were working on issues she had outside of class and that he would make sure it would not happen again. App. 77, 166.

During the fall of 2016, Wadsworth left her parents' home and moved in with a friend and classmate of hers at the home of her friend's parents, Theresa and Darren Kenniston. App. 78, 167. Theresa Kenniston became increasingly concerned about Cavanaugh's relationship with Wadsworth in the fall of 2017. App. 78, 168. At approximately the same time, RSU 40's school resource officer shared concerns he had about Wadsworth driving Cavanaugh's car with Pease. App. 78 Pease questioned Cavanaugh about this and he told her Wadsworth was buying the car, an explanation she accepted. App. 78, 168.

Approximately one month later, on or around November 1, 2017, Theresa Kenniston reported her concerns to law enforcement. App. 79, 169. The following day, the Waldoboro Police Chief called Superintendent Nolan about concerns that

had been reported regarding messages exchanged between Cavanaugh and a student at MVHS. App. 79, 169-170. Prior to this phone call the Superintendent was not aware of any concerns about the relationship between Cavanaugh and Plaintiff or any inappropriate behavior on Cavanaugh's part. App. 80, 171. During the November 2 phone call, the Chief asked the Superintendent to give him twenty-four hours before taking any action to avoid compromising the law enforcement investigation. App. 79, 170. On Friday, November 3, 2017, the Superintendent spoke with Detective Donald Murray of the Knox County Sherriff's Department. Detective Murray also asked the Superintendent not to interview Cavanaugh until Detective Murray had interviewed him. App. 79, 170. Then on Sunday, November 5, 2017, the Superintendent called Cavanaugh and put him on leave, instructing him not to report to MVHS the following day. App. 79, 170. After investigation, the Superintendent prepared a memorandum to present to the School Board summarizing the results of the investigation and recommending that the School Board dismiss Cavanaugh. App. 80, 171. Cavanaugh resigned from his position as MVHS Principal before the School Board held a dismissal hearing. App. 80, 171.

Pease and Philbrook did not know Mr. Cavanaugh behaved inappropriately toward Plaintiff until after November 2017. App. 81, 174. Philbrook knew that they had communicated by text but did not know the substance of those texts. App. 81; *see also* Add. 123 (Decision at 73).

**B. The District Court's Summary Judgment Decision**

After the close of discovery all three defendants filed separate motions for summary judgment. In a carefully reasoned opinion, the district court granted summary judgment in favor of RSU 40 on Wadsworth's Title IX claim because "there are no genuine issues of material fact that could sustain the plaintiff's contention that an official with the authority to implement corrective measures had actual knowledge of the alleged harassment and acted with deliberate indifference toward her." Add. 51 (Decision at 1). The court based its decision in this regard on its conclusion that "the actual knowledge prong is where Ms. Wadsworth's Title IX claim fails to pass must." Add. 121 (Decision at 71). Noting that case law requires "highly reliable and similar reports of inappropriate teacher behavior and, for example, 'rumors, investigations, and student statements,'" the district court determined that what the assistant principals were alleged to have known were "significantly less egregious" that the level of knowledge in cases where actual knowledge was found. Add. 122 (Decision at 72). It thus correctly entered summary judgment in favor of the District on the Title IX claim.

The court likewise granted summary judgment in favor of RSU 40 on Wadsworth's Section 1983 claim because "the record similarly does not support her claim that any school district policy or failure to train caused her injuries." Add. 51 (Decision at 1). In assessing this claim the court looked first at Wadsworth's

unconstitutional policy claim. It examined concerns that it had initially raised at the motion to dismiss stage and concluded that "[t]he development of the summary judgment record has allayed the Court's concerns about the potential deficiency in the policy." Add 129 (Decision at 79). It then went on to correctly hold that regardless, the policy was not the moving force behind Wadsworth's injury. Add. 132 (Decision at 82).

Finally, it turned to Wadsworth's failure to train claim, to noting that the undisputed record evidence was that the District does train its employees, and to the extent that training was not sufficient, that deficiency did not constitute deliberate indifference. Add. 136 (Decision at 86). The district court thus correctly entered summary judgment in RSU 40's favor on the Section 1983 claim.

## SUMMARY OF THE ARGUMENT

The United States Supreme Court has held that "a recipient of federal funds may be liable in damages under Title IX only for its own misconduct." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 640 (1999).  Thus, in order for an educational institution to be liable under Title IX for the sexual harassment of a student, the student must establish that an "appropriate person" at the institution had "actual knowledge" of the harassment.  An "an appropriate person" is "an official of the recipient entity with authority to take corrective action to end the discrimination," *Gebser v. Lago Vista Ind. Sch. Dist.*, 524 U.S. 274, 290 (1998).

On appeal, Wadsworth has identified three individuals in two different positions within RSU 40 that she claims constitute "appropriate persons" in this case: (1) the social worker, Chuck Nguyen; and (2) the two assistant principals, Tamra Philbrook and  Linda Pease.  As a threshold matter, Wadsworth's arguments with respect to Nguyen should be disregarded because they were not argued below and have therefore been waived.

Moreover, on the record in this case, where the harasser was the school principal, neither Nguyen nor the assistant principals constitute "appropriate persons" under Title IX because they were the harasser's subordinates and had no authority to take corrective action.  Therefore, under clear Supreme Court precedent, RSU 40 is entitled to summary judgment on the Title IX claim.

Furthermore, as the district court correctly held, neither of the two assistant principals, the only two people Wadsworth argued below were "responsible persons," had actual knowledge that the harassment was occurring. "Actual knowledge" means just that – actual knowledge, that harassment was occurring – and here the record evidence fell far short of that requirement. All that Wadsworth was able to point to was a handful of incidents that do not rise to the level of actual knowledge. The district court thus correctly determined that the actual knowledge requirement was fatal to Wadsworth's Title IX claim.

With regard to Wadsworth's Section 1983 claim, the district court correctly determined that there was no basis for municipal liability in the record. Contrary to Wadsworth's contention, the District's Sexual Harassment Policy does not have a "lacunae," Wadsworth Br. 53, making it unclear who to report to when the principal is the harasser. As is clear on the face of the policy and as was understood by every single person who testified in this case, although generally allegations of sexual harassment are funneled through the building principal, where he is the alleged harasser, complaints go to the Superintendent. Moreover, as the district court correctly found, given that no one in this case believed that Cavanaugh was sexually harassing Wadsworth, any deficiencies in the policy were not the driving force of any injury sustained by Wadsworth.

Finally, the district court properly rejected Wadsworth's failure to train claim both on the factual record – there being record evidence that people were trained – and because there was any record evidence upon which the court could conclude that the failure to train was a practice of the District.

## **ARGUMENT**

### I.       **Standard of Review**

This Court reviews a district court's grant of summary judgment de novo. *Mancini v. City of Providence ex rel. Lombardi*, 909 F.3d 32, 38 (1st Cor. 2018). Although the summary judgment record and all reasonable inferences therefrom must be taken in the light "most agreeable" to the non-moving party, this Court will nevertheless affirm a grant of summary judgment where, as here, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. (quotation marks omitted).  In so doing, this Court considers whether the non-movant has satisfied her burden of producing "specific facts sufficient to deflect the swing of the summary judgment scythe." *Id*. (citation and quotation marks omitted).

"Conclusory allegations, improbable inferences, acrimonious invective, or rank speculation will not suffice" to meet that burden, *id*., because "[s]ummary judgment is the put up or shut up moment in litigation," *Guldseth v. Fam. Med. Assocs., LLC*, 45 F.4th 526, 533-34 (1st Cir. 2022).  Moreover, "on an appeal from cross-motions for summary judgment, the standard [of review] does not change," and this Court views each motion separately.  *Pac. Indem. Co. v. Deming*, 828 F.3d 19, 23 (1st Cir. 2016) (alterations and quotation marks omitted).

Here, Wadsworth's arguments on appeal cannot deflect from what the summary judgment record bears out, which is that RSU 40 is entitled to judgment as a matter of law on each of Wadsworth's claims against it.

**II.    The District Court Properly Determined that RSU 40 is Entitled to Judgment as a Matter of Law on the Title IX Claim Because Wadsworth Cannot Point to Evidence that the District was Deliberately Indifferent**

Title 20 U.S.C. § 1681[4] "creates an implied private right of action against federal funding recipients for money damages caused by a recipient's violation of its obligations under [Title IX]." *Doe v. Pawtucket Sch. Dep't*, 969 F.3d 1, 7 (1st Cir. 2020).   Because Title IX is treated as legislation enacted pursuant to Congress's authority under the Spending Clause, "private damages actions are available only where recipients of federal funding had adequate notice that they could be liable for the conduct at issue." *Davis*, 526 U.S. at 640 ("[A] recipient of federal funds may be liable in damages under Title IX only for its own misconduct."); *see also Porto v. Town of Tewksbury*, 488 F.3d 67, 73-74 (1st Cir. 2007) (explaining that courts should look to whether a school district "had notice of the sexual harassment, and either did nothing or failed to take additional reasonable measures after it learned that its initial remedies were ineffective").

---

[4] Section 1681(a) provides that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

Although sexual harassment of a student by a school administrator "can constitute gender-based discrimination actionable under Title IX" where the acts of sexual harassment are "sufficiently severe and pervasive," *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 65 (1st Cir. 2002), "damages may not be recovered . . . unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct," *Gebser,* 524 U.S. at 277 (1998). This is consistent with "[t]he administrative enforcement scheme" of Title IX, which "presupposes that an official who is advised of a Title IX violation refuses to take action to bring the recipient into compliance. The premise, in other words, is an official decision by the recipient not to remedy the violation." *Id.* at 290.

The deliberate indifference standard consequently has "considerable bite," *Santiago v. Puerto Rico*, 655 F.3d 61, 73 (1st Cir. 2011), requiring "actual notice" to an "appropriate person," 20 U.S.C. § 1682. Because a funding "recipient cannot be directly liable for its indifference where it lacks the authority to take remedial action," *Davis*, 526 U.S. at 644, an "appropriate person" is "an official of the recipient entity with authority to take corrective action to end the discrimination," *Gebser*, 524 U.S. at 290 (explaining that the "remedial scheme under Title IX is predicated upon notice to an 'appropriate person' and an opportunity to rectify any violation"); *see also Santiago*, 655 F.3d at 74 (1st Cir. 2011) (explaining that the

appropriate person must, at a minimum, be someone who "has the authority to institute corrective measures"). This Court has concluded that the "appropriate person" must therefore be someone with disciplinary authority such that he or she can "order the taking of corrective measures." *Id.* ("[W]here, as here, the alleged harasser is not a person subject to the principal's customary disciplinary authority, the principal may not qualify as an appropriate person."). Indeed, the plain language of Title IX "confines the scope of prohibited conduct based on the [funding] recipient's degree of control over the harasser." *See* also *Davis*, 526 U.S. at 644-45 ("Only then can the [funding] recipient be said to 'expose' its students to harassment or 'cause' them to undergo it 'under' the recipient's programs.").

"Actual notice" is likewise a "demanding" standard, Add. 124, requiring actual knowledge of the discrimination itself and not mere reason to suspect possible sexual harassment, *see Gebser*, 524 U.S. at 291 (explaining that a complaint from parents that the harasser had made inappropriate comments during class was insufficient to alert the principal to the specific Title IX violation, which was a sexual relationship between the student-victim and the alleged harasser). "This stringent requirement . . . eliminate[s] any risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions." *Santiago*, 655 F.3d at 73 (quotation marks omitted) (quoting *Davis*, 526 U.S. 643). Moreover, "[w]here a school district's liability rests on actual notice principles," as

it does here, "the knowledge of the wrongdoer himself is not pertinent to the analysis." *Gebser*, 524 U.S. at 291.

Finally, "the deliberate indifference standard of course requires that the funding recipient's actions—or failure to act—caused the student's subsequent harassment in some way or made the student 'liable or vulnerable' to harassment. *Pawtucket*, 969 F.3d at 9. Accordingly, in situations where, unlike here, the victim has alleged "post-notice interactions between the victim and the harasser," those allegations can be the basis for Title IX liability. *Id.*

This Court should affirm the district court's conclusion that RSU 40 is entitled to judgment as a matter of law on Wadsworth's Title IX claim because the summary judgment record is devoid of facts from which a reasonable fact-finder could conclude that an "appropriate person" had "actual knowledge" of a Title IX violation.

i.  <u>Wadsworth's New Argument that Nguyen is an "Appropriate Person" with "Actual Knowledge" Has Been Waived.</u>

"[A]rguments not raised in the district court cannot be raised for the first time on appeal," and this remains true even where the appellant advances a "new legal theory in support of the same result." *Sierra Club v. Wagner*, 555 F.3d 21, 26 (1st Cir. 2009) (explaining that this Court can *affirm* a judgment on a legal ground not relied upon in the district court, but that it is "altogether different to *reverse* a judgment on a ground never raised in the lower court." (emphasis in original)).

Wadsworth only argued below that Pease and Philbrook were "appropriate persons" within the meaning of Title IX. *See* Add. 112 (Decision at 62) (explaining that Wadsworth identified "only Ms. Pease and Ms. Philbrook as appropriate persons"). In an attempt to salvage her Title IX claim, however, Wadsworth argues for the first time on appeal that Nguyen is an "appropriate person." Wadsworth Br. 39-44. Wadsworth acknowledges in her brief that she failed to make this argument below. Wadsworth Br. 39 n.5. She attempts, however, to get around that fact by contending that she "could not" argue, at the summary judgment stage, that Nguyen was an "appropriate person" under Title IX "[d]ue to the District Court's ruling that Ms. Wadsworth had not alleged Mr. Nguyen's control," Wadsworth Br. 39 n.5.

There is no merit to Wadsworth's attempted excuse of this clear waiver. In the first place, if Wadsworth felt constrained by the district court's ruling on the motion to dismiss, she could have amended her complaint to add allegations supporting her contention that Nguyen was an "appropriate person" but she chose not to do so. Second, there is no basis for Wadsworth's suggestion that the court's statement at the motion to dismiss stage that Wadsworth had failed to allege facts showing that Nguyen could institute corrective measures under Title IX prevented her from making a legal or factual argument to the contrary at the summary judgment phase that Nguyen was indeed an "appropriate person" within the meaning of Title

IX.[5]  Finally, of course, if Wadsworth really was unable to make  the argument to the

court below because of its prior ruling, that does not give her license to argue it for

the first time before this Court.  *E.g. Merrill Lynch, Pierce, Fenner & Smith, Inc. v.*

*Flanders-Borden*, 11 F.4th 12, 16 (1st Cir. 2021) (stating that it "hardly bears

repeating" that as a general matter arguments not raised below cannot be raised on

appeal).  Her remedy in that instance would be to appeal the prior ruling.  This Court

should not reach Wadsworth's arguments that Nguyen is either an "appropriate

person" or had "actual notice" because such arguments were unequivocally waived

when Wadsworth failed to argue them below.

ii.    The Summary Judgment Record Establishes that Nguyen was not an "appropriate person."

In any event, the summary judgment record demonstrates that Nguyen is not

an "appropriate person" for the purposes of Title IX because there is no evidence

that Nguyen, in his role as a social worker at MVHS, possessed any disciplinary

authority over the principal of MVHS.  Courts that have considered the issue have

determined that social workers are *not* "appropriate persons" for the purpose of Title

_____

[5] To the extent that Wadsworth contends that she "could not" argue that Nugyen was an "appropriate person" due to the district court's dismissal of her Section 1983 equal protection claim against Nguyen individually on the basis that she had failed to plead facts establishing Nguyen's supervisory liability, *see* Add. 40, that conclusion likewise did nothing to stop Wadsworth from contending that Nguyen was an "appropriate person" under her entirely separate Title IX claim against RSU 40.

IX. *See Santiago*, 655 F.3d at 74 ("[I]t is clear that a lesser functionary within the school (say, a teacher or social worker) does not have the authority to order the taking of corrective measures."); *Plamp v. Mitchell School Dist. No. 17-2*, 565 F.3d 450, 458 (holding that school social worker was not "appropriate person" where there was no evidence that social worker had "the power to stop or prevent the harassment from occurring by taking actions such as suspending [the alleged harasser] from teaching, curtailing his teaching or other school-related privileges, requiring him to attend sessions or meetings about his behavior, or ensuring that he was under greater supervision"); *Warren ex rel. Good v. Reading School Dist.*, 278 F.3d 163,165-66, 170, 173 (3d Cir. 2002) (school social worker, who received report that student had been taken to fourth-grade teacher's home where they played physical games, was not "appropriate person" under Title IX because, even though social worker's job involved addressing students' behavioral problems, making referrals to agencies, and assuming the role of principal at times, there was no record evidence that he was "cloaked with sufficient authority" to be an appropriate person).

Wadsworth's argument is that Nguyen had the ability to "influence" Cavanaugh, *see* Wadsworth Br. 41-43, but even if the summary judgment record did support that contention, the test is not whether a person has the ability to influence but rather whether they have the authority to take corrective action. Here, there is

no record evidence to support a contention that Nguyen had any such authority over the school principal.

In apparent recognition of that, in addition to arguing that Nguyen had "influence" over Cavanaugh, Wadsworth also argues that "Nguyen was an appropriate person to institute corrective measures because . . . he could have reported the principal's conduct to the Superintendent, law enforcement or to child protective services." Wadsworth Br. 43. This argument improperly conflates the ability to report suspected sexual harassment (which applies to virtually anyone employed at a school) with the authority to take corrective measures in compliance with Title IX. These two kinds of authority are not the same. *Plamp,* 565 F.3d at 459 ("Title IX does not contemplate a definition of 'corrective measures' so broad as to include the mere ability to report suspicions of discriminatory conduct to someone with the authority to stop the abuse or control the harasser."); *Ross v. Univ. of Tulsa*, 859 F.3d 1280, 1290 (10th Cir. 2017) ("[M]erely passing on a report of sexual harassment to someone authorized to take corrective action is not itself corrective action."); *Baynard v. Malone*, 268 F.3d 228, 238-39 (4th Cir. 2001) (holding that an appropriate person under Title IX must be "invested with the power to take corrective action on behalf of the [school district]" and thus "remedy the wrongdoing themselves," as opposed to merely reporting to others); *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 660-61 (5th Cir. 1997) (holding that an

appropriate person must have authority to repudiate and eliminate the harassment on behalf of the school district and "merely reporting the abuse to superiors or to law enforcement is insufficient").

Nor do the cases cited by Wadsworth actually support her argument that guidance counselors or teachers are "appropriate persons" under Title IX by virtue of their compliance with mandatory reporting. Contrary to Wadsworth's contention that *B.W. v. Career Tech. Ctr. Of Lackawanna Cnty.*, 422 F.Supp.3d 859 (M.D. Pa. 2019) stands for the proposition that a mandatory reporter is an "appropriate person," what that case really holds is that where there was an allegation that teacher had complied with mandatory reporting duties and reported sexual harassment to appropriate officials, that was sufficient to state a claim that there was actual knowledge by the appropriate officials who receive the claim.

Similarly, in *Doe v. Loyalsock Twp. Sch. Dist.*, 2022 WL 1110310, at *4 (M.D. Pa. April 13, 2022) the court expressly stated that standing alone, the allegation that a school counselor received a report of the sexual harassment would be insufficient to show actual knowledge by an "appropriate person" but that the complaint could survive because there were allegations that administrators were made aware of these reports.

The other cases cited by Wadsworth as support for guidance counselors being "appropriate persons," *see* Wadsworth Br. 40, are distinct for other significant

reasons. In *J.S. v. Houston Cnty. Bd. of Educ.*, the Eleventh Circuit determined that two special education teachers could be "appropriate persons" when the alleged harasser was a teacher's aide and the special education teachers were responsible for supervising the work of teachers' aides and informing teachers' aides how to comply with students' IEPs. 877 F.3d 979, 989-90 (11th Cir. 2017). Here, unlike in *J.S.*, the record is devoid of any evidence that Nguyen had the authority to supervise Cavanaugh, discipline Cavanaugh, or at all tell him how to perform his job. In *E.N. v. Susquehanna Tp. School Dist.*, the Middle District of Pennsylvania determined that two guidance counselors could have been "appropriate persons" when one teacher referred the student to the guidance counselors to report another teacher's sexual assault, and those two guidance counselors had the follow-up meeting with the student "*after*" those guidance counselors had discussed the report with the administration. No. 1:09-cv-1727, 2010 WL 4853700, at *16 (M.D. Pa. Nov. 23, 2010) (emphasis in original). In determining that the counselors could be "appropriate persons" under these circumstances, the court emphasized that the counselors had discussed the sexual assault report with the administration prior to meeting again with the student. *Id*. at *16. Thus, unlike here, it could be said in *E.N.* that the guidance counselors were "cloaked with sufficient authority" under the specific circumstances alleged in that case.

Finally, Wadsworth's contention that *Santiago* supports the proposition that guidance counselors are "appropriate persons" under Title IX is entirely misplaced. In *Santiago*, this Court held that a school principal was not an "appropriate person" under Title IX when he did not have authority to take corrective action against a bus driver who was employed by a private company and had sexually abused special education students. *Santiago* therefore undermines Wadsworth's contention that Nguyen is an "appropriate person" because it stands for the proposition that an "appropriate person" is someone who has disciplinary authority over the harasser. *Santiago*, 655 F.3d at 74 ("A school principal may . . . be considered an appropriate person" where the alleged harasser is "subject to the principal's customary disciplinary authority."). *Santiago* compels the conclusion that Nguyen is *not* an "appropriate person" under Title IX because the summary judgment record here contains no facts demonstrating that Nguyen had the ability to take corrective measures with respect to Cavanaugh's acts of harassment.

iii. <u>Wadsworth Failed to Produce Specific Facts Showing that Either Philbrook or Pease was an "Appropriate Person" for the Purposes of Title IX.</u>

On appeal, Wadsworth assumes, without discussion, that the district court correctly held that the two assistant principals, Pease and Philbrook, were "appropriate persons" for Title IX purposes. In fact, they were not. The district court's conclusion to the contrary was based on an erroneous conflation of the duty

to report complaints of harassment with the authority to take remedial action. As the Supreme Court explained in *Davis,* because Title IX is a funding statute, a funding recipient can only be liable for violation of the statute for its own misconduct. 526 U.S. at 640. Therefore, "damages may not be recovered . . . unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct," *Gebser,* 524 U.S. at 277. Reporting sexual harassment does not equate to the authority to take corrective measures. *See e.g.*, *Plamp*, 565 F.3d at 458 ("[E]ach teacher, counselor, administrator, and support-staffer in a school building has the authority, if not the duty, to report to the school administration or school board potentially discriminatory conduct. But that authority does not amount to an authority to take a corrective measure or institute remedial action within the meaning of Title IX").[6] In this case, it was undisputed that neither Pease nor Philbrook had disciplinary authority over Cavanaugh. App. 163. They were not, therefore, "appropriate persons" under Title IX.

---

[6] Indeed, this distinction helps reconcile the "irony," as the district court characterized it, with respect to RSU 40's simultaneous positions that the assistant principals are not "appropriate persons" under Title IX but that they were to report sexual harassment by the principal to the Superintendent under the school's Policy. *See* Add. 130 (Decision at 80, n.90).

iv.   The District Court Properly Concluded that Neither Philbrook nor Pease had "Actual Knowledge" of any Sexual Harassment.

If this Court holds that Pease and Philbrook were not "appropriate persons," the district court's entry of summary judgment in favor of RSU 40 on the Title IX claim should be affirmed without the need to parse through the issue of actual notice. In any event, the district court correctly held that neither Pease nor Philbrook had actual notice of the sexual harassment of Wadsworth.

"[A]ctual notice requires more than a simple report of inappropriate conduct by a teacher," *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1154 (10th Cir. 2006) (quotation marks omitted), and this Court must reject Wadsworth's attempt to clear this high hurdle by arguing facts that the record does not support. The limited scope of knowledge that Philbrook and/or Pease had in advance of the Superintendent's investigation was accurately described by the district court:

> Ms. Pease and/or Ms. Philbrook were aware that Mr. Cavanaugh was pulling Ms. Wadsworth out of class, had called her "cupcake" and communicated with her by text message, had considered inviting her to move in with him and his wife, and that she was working with him and driving a car he owned—which he had explained she was working to buy from him. While teachers and Officer Spear may have expressed concerns to Ms. Pease and Ms. Philbrook that Mr. Cavanaugh's relationship with Ms. Wadsworth may have been concerningly close or "that the perception was that she was receiving special treatment in the form of favoritism," there is no evidence in the record to suggest that either was aware of reports of any type of actual or suspected sexual contact or harassment. Finally, while Ms. Philbrook appears to have been aware that Mr. Cavanaugh had been texting Ms. Wadsworth, there is no evidence suggesting that she was aware of the frequency or sexually explicit nature of his messages.

Add. 124.

Deafening any alarm that these facts now sound in light of the Superintendent's later investigation are the record facts that Cavanaugh informed Philbrook and Pease that his meetings during class time with Wadsworth were intended to support her with a difficult family situation and that it is not uncommon for students to be called out of class for such meetings. Add. 122-23. Moreover, in Philbrook's experience, it was normal for a student to do work for payment from a principal. Add. 124.

Wadsworth cannot now expand Philbrook and Pease's limited scope of knowledge by making arguments on appeal based on facts that are not part of the record. *See Feliciano-Munoz v. Rebarber-Ocasio*, 970 F.3d 53, 62 (1st Cir. 2020) ("The non-movant cannot merely rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." (quotation marks omitted)).

Specifically, the following facts advanced by Wadsworth in her brief, Wadsworth Br. 47-51, are not part of the summary judgment record: that Philbrook knew Cavanaugh sent "text messages to Ms. Wadsworth with gendered nicknames;"[7] that Philbrook knew that Cavanaugh found Wadsworth attractive and

---

[7] The record supports the fact that Philbrook was "present for at least part of a conversation where Mr. Cavanaugh . . . called [Wadsworth] "cupcake." *See* App.

had agreed with Cavanaugh's references to her as a "pretty girl" and "top shelf;" that Cavanaugh clearly communicated that he found Wadsworth attractive when Philbrook heard the conversation in which he asked Wadsworth who she was taking to prom; that Philbrook and Pease were aware of gifts, including tampons, that Cavanaugh had given to Wadsworth; that Philbrook made a remark to the effect of "if only Officer Spear knew half the story;" that Cavanaugh gave Wadsworth cash in front of Philbrook; nor that Philbrook believed that Cavanaugh wanted to have sex with Wadsworth.  None of these facts advanced by Wadsworth in her opening brief are included in the summary judgement record before the district court, and the summary judgment standard does not permit Wadsworth to conjure up "actual knowledge" based on these facts that are not in the record.  *See Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) ("Genuine issues of material fact are not the stuff of an opposing party's dreams.").

Nor do Wadsworth's legal arguments regarding actual notice do any better. Wadsworth argues that the district court erroneously applied a "subjective standard"

---

132, Add. 123.  However, the record does not support the fact that Philbrook was aware of the content of any text messages between Cavanaugh and Wadsworth, *see id*. ("Ms. Philbrook was aware that Mr. Cavanaugh and Ms. Wadsworth had communicated by text but did not learn of the content of some of the text messages between Mr. Cavanaugh and Ms. Wadsworth until Ms. Philbrook read them in the newspaper, and she did not know Mr. Cavanaugh messaged with Ms. Wadsworth outside of school.").

to the actual notice requirement rather than an "objective standard," and she contends that a subjective analysis leads to absurd results by "promoting ignorance." Wadsworth Br. 44-45. This argument, alongside her argument that students are incapable of reporting incidents of sexual harassment, entirely misses the purpose of the "actual notice" requirement of the deliberate indifference standard, which by design is intended to hold funding recipient's liable only where they had adequate notice of the violation. *See Gebser*, 524 U.S. 274, 285 (1998) ("[I]t would frustrate the purposes of Title IX to permit a damages recovery against a school district . . . based on principles of respondeat superior or constructive notice."). Indeed, contrary to Wadsworth's arguments regarding the promotion of ignorance, the remedial scheme functions to provide significant incentive for the funding recipient to take corrective actions once the recipient has such notice. *Id.* at 290 ("The administrative enforcement scheme . . . presupposes that an official who is advised of a Title IX violation refuses to take action to bring the recipient into compliance.").

This Court should reject Wadsworth's attempt to generate a dispute among this Court's sister circuits regarding the objective nature of the "actual notice" standard. There is no dispute: courts look to whether the facts known to the appropriate person would have provided him or her with *actual knowledge* of the Title IX violation. *See Doe v. Fairfax County Sch. Bd.*, 1 F.4th 257, 266-67 (4th Cir. 2021) ("Our understanding of actual notice comports with the nearly unanimous

view of our sister circuits," which have held that, "to have actual knowledge of an incident, school officials must have witnessed it *or received a report of it*." (emphasis in original and alterations omitted) (quoting *Doe v. Glaser*, 768 F.3d 611, 614 (7th Cir. 2014)); *see also Santiago*, 655 F.3d at 74 (principal would not have had actual knowledge even if he were the appropriate person when the student's complaint that he was molested by bus driver was never passed along to the principal because "actual knowledge" cannot be based on "constructive knowledge"); *Gebser*, 524 U.S. at 285 (rejecting the argument that a funding recipient could be liable under Title IX based on constructive notice).[8]

This well-settled analysis comports with the actual notice analyses in the cases cited by Wadsworth, Wadsworth Br. 44-47, all of which demonstrate that, unlike here, the appropriate school officials had received actual reports of a possible Title IX violation. *See Fairfax*, 1 F.4th at 271-72 (holding that no reasonable jury could have concluded that the school district did not receive a report or complaint alleging sexual harassment when there was evidence that the victim herself provided a written

---

[8] The Fourth Circuit's conclusion that "actual knowledge" is measured objectively was in the context of rejecting the argument that a school must have already determined that the sexual harassment did indeed occur. *See Fairfax*, 1 F.4th at 268 ("It would be illogical to require a school to investigate a complaint alleging sexual harassment only if it has already determined that such harassment did in fact occur. . . . [Actual notice] is an objective inquiry which asks whether an appropriate official in fact received such a report or complaint and whether a reasonable official would construe it as alleging misconduct prohibited by Title IX.").

statement to school officials stating that an older male student had sexually touched her on a school trip and the principal joked about the incident to her in response); *Brown v. Arizona*, 82 F.4th 863, 881 (9th Cir. 2023) (university could have acted with deliberate indifference when multiple officials received reports from student about multiple incidents in which she was choked by the harassing student, and that harassing student thereafter violently assaulted a third student); *Forth v. Laramie Cnty. Sch. Dist. No. 1*, 85 F.4th 1044, 1060-64 (10th Cir. 2023) (school might have had actual knowledge of student's relationship with teacher where there was record evidence that, among other things, the student was seen with her arm around the teacher while touching his face and neck, they spent time together on three different professional development days when there were no other students in school, they were seen drinking out of the same soda bottle, and one administrator actually believed that the teacher posed a risk of sexual abuse to students); *Mary M. v. N. Lawrence Cmty. Sch. Corp.*, 131 F.3d 1220, 1222, 1225 (7th Cir. 1997) (school principal had actual knowledge when he had been informed that a 21-year old employee was on a date with a thirteen-year-old student at the school dance, where they danced together, and the principal thereafter was informed that the student and staffer would be skipping school to spend the day together and did nothing to stop it); *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1258 (11th Cir. 2010) (principal had actual notice when two students in math teacher's classroom had previously

reported that the math teacher sexually propositioned them and had engaged in verbal and physical sexual conduct with them); *see also C.S. v. Madison Metropolitan Sch. Dist.*, 34 F.4th 536, 541-42 (7th Cir. 2022) ("If the conduct of which the school district becomes aware does not itself amount to sex-based discrimination, the school cannot have the requisite 'notice that it will be liable for a monetary award' under Title IX if it fails to take corrective action." (quoting *Gebser*, 524 U.S. at 287)).

Contrary to Wadsworth's contention, case law does not support the proposition that knowledge of a teacher's comments concerning a student's appearance is alone enough to create a dispute regarding "actual notice." Indeed, in the case that Wadsworth cites to advance this argument, Wadsworth Br. 47, the school had conducted a previous investigation into the harasser, and the teacher's *reported* comments regarding the students' appearance were themselves the alleged harassment. *See Brodeur v. Claremont Sch. Dist.*, 626 F.Supp.2d 195, 200, 203, 207-08 (D. N.H. 2009) (school district could have had actual notice when principal was provided a written statement by student describing teacher's repeated and graphic remarks about the size of the student's "buttocks" and principal had previously investigated the same teacher, which revealed that, among other things, he made suggestive comments about female students' breasts).

Here, Pease and/or Philbrook's limited knowledge that Cavanaugh was pulling Wadsworth out of class to speak about family issues, that he had considered asking her to move in with him and his wife, that she was working for him, that they at times exchanged text messages, and that he called her "cupcake" during one meeting simply does not amount to actual knowledge of the sexual harassment. *See, e.g., KD v. Douglas Cnty. Sch. Dist. No. 001*, 1 F.4th 591, 598 (8th Cir.), *cert. denied*, 142 S. Ct. 485 (2021) ("[F]avoritism towards the student; inordinate time spent with the student; unprofessional conduct towards the student; and vague complaints about the teacher's behavior toward the student . . . fall short of creating actual notice."); *Davis v. DeKalb Cnty. Sch. Dist.*, 233 F.3d 1367, 1372-3 (11th Cir. 2000) (where a student complained that a teacher "touched her behind" during a football game but that touching could have been interpreted differently than a Title IX violation, school did not have "actual knowledge" even despite report); *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1120 (10th Cir. 2008) (parent's report to principal that female child, who received special education services due to a brain injury, was afraid to attend math class, did not want her aid in the math class anymore, and had communicated that "boys were bothering her" was insufficient to place the school district on notice that her disabled child was being sexually harassed); *Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 606 (7th Cir. 2008) (school's knowledge that teacher married a former student, "without

actual knowledge of misconduct," was insufficient to show actual knowledge that teacher subsequently engaged in sexual relationship with other student); *see also Doe v. Bradshaw*, 203 F.Supp.3d 168, 185 (D. Mass. 2016) ("[T]he case law is clear that only reliable and unambiguous reports have been deemed sufficient to provide actual knowledge.").

Moreover, and contrary to Wadsworth's argument, the fact that Officer Spear may have been concerned about sexual harassment while others were not does not alter the analysis. Indeed, whether an appropriate person should have known about discrimination is not the standard for "actual knowledge." *See Pawtucket*, 969 F.3d at 7 (explaining that, because "constructive knowledge is plainly insufficient," the fact that a superintendent or principal "ought to have had knowledge" is insufficient); *see also* Add. 125 ("While the school perhaps ought to have known that Mr. Cavanaugh was behaving inappropriately, given the quantity and consistency of rumors about him . . . it cannot be said that the school actually knew of his harassment." (alterations omitted) (quoting *Bradshaw*, 203 F. Supp. 3d at 186).

This Court should affirm summary judgment in favor of RSU 40 on the Title IX claim because the summary judgment record does not show that an appropriate person had actual notice of any Title IX violation prior to the Superintendent's immediate suspension of Cavanaugh.

**III. The District Court Properly Determined that RSU 40 is Entitled to Judgment as a Matter of Law on Wadsworth's Section 1983 Claim Because there is No Record Evidence to Support Municipal Liability**

Municipalities cannot be held vicariously liable under Section 1983. Instead, "[a] municipality or other local government may be liable under [§ 1983] if the governmental body *itself* 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis supplied) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978). The Supreme Court has identified two paths under which a governmental entity's "policy or custom" can be subject to a § 1983 claim: first, where an established policy or action by a municipal decision-maker directly causes the constitutional injury, and, second, where a facially lawful municipal action nonetheless led an employee to violate a person's constitutional rights. *See Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404-07 (1997). Here, Wadsworth cannot point to any facts in the summary judgment record in support of either theory of municipal liability, and RSU 40 is therefore entitled to judgment as a matter of law on the Section 1983 claim.

> i. RSU 40's Sexual Harassment Policy Was Not the 'Moving Force' Behind any Equal Protection Violation

The district court concluded that there was no genuine dispute as to Wadsworth's Section 1983 claim based on her unconstitutional policy theory for two reasons. First, it concluded that there was no record support for the deficiency in

RSU 40's Sexual Harassment Policy advanced by Wadsworth below and now again on appeal, which is her contention that the Policy is ambiguous as to who reports of sexual harassment should go to when the principal is the alleged harasser. Add. 129-132 ("The development of the summary judgment record has allayed the Court's concerns about a potential deficiency in the policy. . . . The Court finds no 'hole' in the District's sexual harassment and reporting policies that could support a § 1983 claim."). Second, the court concluded that, even if the record supported such a deficiency, there is nonetheless no record support for the conclusion that such a deficiency was the "moving force" behind Wadsworth's alleged constitutional injury. Add. 132.

Wadsworth's argument on appeal fails for the same two independent reasons. Indeed, Wadsworth's argument that the Sexual Harassment Policy "fails to define the term 'building principal'" and thus creates "a lacunae as it is not apparent to whom a report may be made to, beyond the school principal," Wadsworth Br. at 53, is not supported by the record. As the district court explained, every single staff member testified to their understanding that they could report potential sexual harassment to the Superintendent if necessary, including under circumstances where the report was about the principal. Add. 130. Indeed, the plain language of the Sexual Harassment Policy provides in the Complaint Procedure that "Individuals who are unsure whether discrimination or harassment has occurred, or who need

assistance in preparing a written [complaint,] are encouraged to discuss the situation with the Superintendent/designee." App. 84. The record therefore does not support Wadsworth's contention that Cavanaugh's conduct would not have happened if the Policy stated that assistant principals qualified as "building principals" to whom Complaints could be made. Wadsworth Br. 54.

Furthermore, as the district court correctly held, Wadsworth cannot, as a matter of law, succeed on that argument because she cannot show that the Policy was the "moving force" behind any deprivation of her Fourteenth Amendment right. *See Board of County. Com'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997) ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."). A municipal policy is the "moving force" behind a constitutional injury when it actually causes the constitutional injury. *See Burrell v. Hampshire Cnty.*, 307 F.3d 1, 10 (1st Cir. 2002) ("To establish liability, we look at whether there was a 'direct causal link' between the policy and the violation, or if the policy 'actually caused' the violation.").

For example, where the Board of Education and the Department of Social Services had an official policy that required pregnant employees to take a leave of absence without pay before it was medically necessary to do so, that formal policy was the "moving force" of the constitutional harm because the policy itself directly caused the plaintiff's right to equal protection under the Fourteenth Amendment. *Monell*, 436 U.S. at 660 & n.2. In contrast, when an inmate was severely beaten and assaulted by a fellow inmate at a county jail, the county was not liable because the county jail policy of not screening or segregating potentially violent prisoners from non-violent prisoners was not the "actual cause" of the injured inmate's injuries. *Burrell*, 307 F.3d at 10. And where a school district had a hiring policy of screening applicants, including with criminal background checks, that official policy was not the "moving force" behind a teacher's sexual abuse of a student even though that teacher's criminal history revealed he had been arrested for "official oppression" of a minor and the hiring administrator was negligent. *Doe v. Edgewood Ind. Sch. Dist.*, 964 F.3d 351, 357, 365-66 (5th Cir. 2020) ("'Moving force causation' is more than 'but for' causation. Doe must show that the final policymaker had the requisite degree of culpability and that [the school's] policies were the actual cause of the constitutional violation."). Instead, it was the teacher's misconduct that was the "actual cause of the violation." *Id*. at 366.

So it is here: Cavanaugh's misconduct was the "actual cause" of any constitutional violation, and the school's Sexual Harassment Policy cannot, as a matter of law, form the basis of a Section 1983 claim against RSU 22.

ii.   Wadsworth Cannot Point to Any Facts Showing that a Failure to Train Led Amounted to Deliberate Indifference

It is "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by [case law]" that a municipality can be "liable for such a failure under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). Accordingly, a claim that a municipality has violated the Constitution through its failure to train its employees requires showing that the failure to train amounted to "deliberate indifference," which "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Moreover, "for liability to attach . . . the identified deficiency in a city's training program must be closely related to the ultimate injury." *Canton*, 489 U.S. at 391.

The district court correctly concluded that the summary judgment record was devoid of evidence in support of any of these requisite showings. First, it concluded that RSU 40's training on its sexual harassment policies and procedures did not amount to deliberate indifference. Add. 134-36. Second, it concluded that Wadsworth could not show that any deficiency in training was the cause of her injuries because there was no record evidence "that any staff member believed Ms.

Wadsworth was being sexually harassed or that a staff member was confused about how to report sexual harassment." Add. 136-37.

Wadsworth acknowledges in her opening brief that the deliberate indifference standard generally requires that policymakers had "actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." *Connick*, 563 U.S. at 61; see Wadsworth Br. 55. Normally, this requires a plaintiff to show a "pattern of similar constitutional violations by untrained employees," *id.* at 62, which here Wadsworth cannot show. This alone is enough for this Court to determine that, as a matter of law, Wadsworth cannot show municipal liability based on a failure to train. *See, e.g.*, *Gray v. Cummings*, 917 F.3d 1, 13-14 (1st Cir. 2019) (finding summary judgment for municipality on failure-to-train claim where there was no evidence of past violations); *Hill v. Walsh*, 884 F.3d 16, 18, 24 (1st Cir. 2018) (same).

Wadsworth nevertheless argues, Wadsworth Br. 55, that this Court should apply the rare, so-called "single-incident" failure to train theory under *City of Canton*, wherein the Supreme Court opined that there could be a circumstance where a failure to train is so patently obvious that there is municipal liability absent a pattern of past violations. 489 U.S. at 390, n.10. In *Canton*, however, the hypothetical single-incident scenario was the complete absence of training despite an obvious need for training. *See id.* (hypothesizing that, if a city were to arm police

officers with firearms without providing training on the use of deadly force, such a failure could amount to deliberate indifference). The summary judgment record here provides no support for a single-incident theory because, unlike in *Canton*, RSU 40 did provide training, and indeed the district court concluded as such. *See* Add. 135 ("The record reveals . . . that each year during the relevant period, Mr. Cavanaugh provided a PowerPoint presentation to staff on the topic [of sexual harassment] and Nguyen, Pease, and Philbrook each recalls attending these presentations and considered them to be trainings."). Wadsworth's contention on appeal that the "record contains evidence that MSAD 40 offered no training on reporting sexual harassment," Wadsworth Br. 55, is simply not supported by the record.

Moreover, and as the district court properly concluded, Wadsworth cannot show any deficiency in training was the cause of her injuries because there is no record evidence that any staff member believed that she was being sexually harassed. *See Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. at 405-06 ("To the extent that we have recognized a cause of action under § 1983 based on a single decision attributable to a municipality, we have done so only where the evidence that the municipality had acted and that that the plaintiff had suffered a deprivation of federal rights also proved fault and causation.").

Because Wadsworth cannot point to specific facts in the record showing that either an official policy or a deliberately indifferent failure to train were the cause of

her alleged Fourteenth Amendment injury, the district court correctly entered summary judgment in favor of RSU 40 on that claim.

## CONCLUSION

For all of the foregoing reasons, this Court should affirm the decision of the district court entering summary judgment in favor of RSU 40 on all counts of Wadsworth's complaint.

Dated: January 22, 2024

*/s/ Melissa A. Hewey*
Melissa A. Hewey
First Circuit Bar No. 40774
*Attorney for Defendant/Cross-Appellee*

**DRUMMOND WOODSUM**
84 Marginal Way, Suite 600
Portland, ME  04101-2480
Tel: (207) 772-1941
mhewey@dwmlaw.com

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,799 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using serifs in Times New Roman 14 point font.

Dated: January 22, 2024

*/s/ Melissa A. Hewey*
Melissa A. Hewey
First Circuit Bar No. 40774
*Attorney for Defendant/Cross-Appellee*

**DRUMMOND WOODSUM**
84 Marginal Way, Suite 600
Portland, ME  04101-2480
Tel: (207) 772-1941
mhewey@dwmlaw.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 22, 2024, I electronically filed the Brief of Cross-Appellee MSAD 40/RSU 40 with the U.S. Court of Appeals for the First Circuit by using the CM/ECF system which will send notification of such filing to all parties through their counsel of record.


Dated: January 22, 2024        <u>*/s/ Melissa A. Hewey*</u>
                                         Melissa A. Hewey
                                         First Circuit Bar No. 40774
                                         *Attorney for Defendant/Cross-Appellee*

**DRUMMOND WOODSUM**
84 Marginal Way, Suite 600
Portland, ME 04101-2480
Tel: (207) 772-1941
mhewey@dwmlaw.com